ALBANY,
May, 1839.

In the matter
of John and
Cherry-streets.

In the matter of JOHN AND CHERRY-STREETS, IN THE CITY OF NEW-YORK.

Where an ancient street in the city of New-York, situate south of the line designated by the act of the legislature, passed 3d April, 1807, as the southern boundary of that part of the city authorized by that act to be surveyed and laid out into streets and public squares, is closed or discontinued in whole or in part in improvements made under the direction of the corporation the land over which such street or part of the street passed results to the owner of the land directly opposite to the portion of the street closed or discontinued, the title of such owner extending prima facie and of common right ad filum medium viœ, subject only to the public right of way : and consequently an act of the legislature vesting such street or portion of a street so closed or discontinued in the corporation of the city, is unconstitutional and void.

The true reading of the clause in magna charta that "no freeman shall be disseized of his freehold, &c. but by the law of the land," is, that no freeman shall be disseized, &c. except by due process of law.

On a motion to confirm the report of commissioners of estimate and assessment, the policy or expediency of the contemplated improvement will not be considered. Whether the determination of the corporation in this respect can in any way be reviewed, quere ; though it seems that a certiorari lies for want of jurisdiction, or error on the face of the proceedings.

On the coming in of the report, affidavits of disinterested persons in respect to the amounts of benefits and damage estimated and assessed will be received and considered, provided the same have previously been submitted to the commissioners; but unless there be a plain and decided preponderance of evidence against the judgment of the commissioners, the report will be confirmed. The report is not only viewed with the same favor as the verdict of a jury, that is, is sustained until it be affirmatively and clearly shown to be unwarranted by the evidence, but is regarded with still greater consideration, inasmuch as the commissioners are authorized to act upon personal view and individual knowledge, and it seems, upon information derived from persons not under oath.

The opinions of disinterested persons in respect to the amounts of benefit and damage will be received, but the commissioners are not bound to regulate their estimates by such opinions, however numerous.

The affidavits of owners of property taken, or assessed for benefit, giving their estimates of value or benefit, are not admissible ; the owners being parties cannot be witnesses.

In estimating and assessing the amount of damage and benefit, the commissioners are not authorized to act upon an appraisement unverified by oath, of the expense of the removal of buildings, alterations and repairs, made by individuals to whom that duty had been delegated.

ALBANY,    Commissioners of estimate and assessment, both at common law and by stat-
May, 1839.    ute are authorized to administer oaths to witnesses in all matters relating to
              the discharge of their duties.
In the matter  When a lot is reported as benefitted, it is no objection to the report that the
  of John and    persons named as owners are not the real owners, provided the lot itself be
Cherry-streets.    truly described ; where damage is allowed, it seems it would be otherwise.
              An estate in remainder in fee, after a life estate, may be mortgaged, although
                 by the will creating the estate power is given to third persons to sell the
                 land for the purpose of a division among the devisees.
              A mortgage payable at or before a day certain, may be paid immediately ; the
                 motgagor cannot be required to keep the money and pay interest until the
                 day specified in the mortgage.
              Where property taken for a street is subject to a mortgage, it is the duty of
                 the commissioners to award the sum allowed as damage to the mortgagee,
                 or at least as much thereof as is necessary to satisfy the mortgage, and that
                 although the money be not due.
              Affidavits which have not been submitted to the commissioners are inadmissi-
                 ble on appeal, when offered for the purpose of attacking or setting aside the
                 report, but will be received in support of the report ; so held by a majority of
                 the judges in the case of Anthony street, (post) cited in this case by Cowen,
                 J., who dissented.
              Parties interested, who have omitted to lay their proofs before the commission-
                 ers, are concluded, unless they show want of knowledge of the pro-
                 ceedings on the part of the corporation.  If a satisfactory excuse be offer-
                 ed, the report will be remitted, so that there may be an opportunity to be
                 heard.

PROCEEDINGS were had for the purpose of enlarging,
straightening and improving John and Cherry-streets ; and in
reference to the first street, for the purpose of *closing up* parts
thereof and transferring the *fee* of the portions discontinued to
the corporation of the city of New-York. On the coming in
of the report of the commissioners of estimate *and assessment,*
at the special term in December last, its confirmation was
moved for, which motion was opposed by counsel in behalf
of various objectors. The facts upon which the questions,
which were debated arose, appear in the opinion of the
court.

*R. Emmet,* (counsel for the corporation,) and *J. Leveridge,*
for the motion.

*M. T. Reynolds, W. Silliman* and *R. Bogardus,* contra.

*By the Court,* COWEN, J. FIRST as to John Street.

ALBANY,
May, 1839.

In the matter of John and Cherry-streets.

I. C. Stockton Halsted, in behalf of Magdalena Hughes, objects to that branch of the report which takes for the purpose of this street one sixth, being her undivided interest in certain lands, and awards her share of the damage, $1338,33 to James J. Roosevelt & Son, as the mortgagees of her and her husband. She is the daughter of Ahasueras Turk, deceased, who, in 1806, devised this land in fee to her and five others, in remainder after the death of her mother, who died September 4, 1837. In order to facilitate the division, the will provided that, within two years after Mrs. Turk's (the mother's) death, and on certain events which have happened, the land should be sold and the proceeds divided equally among the six devisees. In 1828 Mrs. Hughes joined her husband in a mortgage of her interest to Roosevelt & Son, to secure a debt of her husband amounting to $849,12, payable, with interest, at or before the end of two years after the death of Mrs. Turk. Therefore the commissioners awarded so much of the $1338, as would pay the mortgage, to Roosevelt & Son. The mortgage was duly acknowledged by Mrs. Hughes, a feme covert, and was sufficient in form to pass her interest. It is settled that the commissioners may assess damages in favor of mortgagees as they have done here. *Astor* v. *Hoyt,* 5 Wendell, 603. The only question made on the argument was, whether Mrs. Hughes had such an interest as was mortgageable. Of this there can be no doubt. See 1 Pow. on Mortg. Rand's ed. 17, a. Mrs. Hughes took by the will, a legal estate in fee, subject to a power of sale. Had a sale been made, the consideration money would have been substituted for the land, upon which money the mortgage might still have operated, under the doctrine of conversion. Her right is not even embarrassed by a trust; but only a power which will be relinquished *pro tanto* by taking the land for a street.

The objector suggests, that the money is not yet due. That it has not yet become payable in the terms of the mortgage makes no difference. The corporation must see to the discharge of this prior incumbrance, in order to se-

ALBANY,    cure their own title, and may keep sufficient of the fund
May, 1839.    till the money falls due.  But here they may pay immedi-
In the matter ately ; for the mortgage is payable at *or before* the expiration
of John and  of the two years.  Anon. Pasch. 25 Eliz. Sir F. Moor's
Cherry streets. Rep. 122, case 266.  16 Vin. Abr. 276, Payment, (J.) pl.
1, S. C.  *Hawley* v. *Simpson*, Cro. Eliz. 14.  *Allen* v.
*Andrews*, id. 73.  3 Wood's Conv. 105, Dubl. ed. 1792, Bonds,
(G.)

II. No. 164, and other property.  Estate of John Gardner,
deceased.  Messrs. Smith and Bennett made an affidavit that,
in estimating the costs of *repairing the stables* under the direc-
tion of the commissioners, they made a mistake.  On produc-
ing their original sworn appraisal, it appears that in the ap-
praisal, they treated the buildings as *being subject to total
destruction* by the improvement, and assessed damage accord-
ingly.  The commissioners had a right to regard their last
affidavit as of no force after such discrepancy.

The affidavits of the owners, Kettletas and McCarty, are
also produced, to show the amount of their damage in va-
rious particulars.  They are parties in nature of plaintiffs,
claiming damage against the corporation ; and are, there-
fore, incompetent witnesses.  Several other affidavits are
produced tending to show, by general estimates, and from
various particulars, that the allowance made by the com-
missioners was too small.  But these are open to observa-
tions which the commissioners were more competent to
make than I can be ; and I am not prepared to say that the
allowance was unjust.  I shall hereafter consider more at
large the force which we must assign to the report where
it conflicts with estimates presented by ex parte deposi-
tions.

III. Andrew C. Zabriskie, No. 187, Broadway, opposite
John street.  This lot was assessed for benefit ; and to that
Mr. Zabriskie objects, inasmuch as the charge of his relations
to John and other streets will be detrimental.  Several de-
ponents occur with him in the views suggested by his re-
monstrance.  The commissioners have had these views
and the proofs, under consideration, in connection with their
local knowledge and other means of applying and appreci-

ating those views and proofs. For this they are much better qualified than I am or can be. They are sworn, entrusted with the office of assessing upon the spot, on actual view, and inquiry in the city. This office of estimate and assessment of damages and benefits peculiarly belongs to the court of original jurisdiction which the commissioners are. The amounts allowed or assessed should hardly be interfered with by the appellate power after a full and fair hearing below on the merits, unless there be some mistake in principle. There is no legal rule by which the amount can be fixed; nor are the commissioners bound to follow the opinions of any number of men who may present affidavits of belief. I must intend that these affidavits were treated with all proper respect by the commissioners ; but were overruled as ill founded upon a consideration of both sides. The same remarks are applicable to No. 181, F. Marquand ; and No. 183, T. Milhau.

ALBANY,<br>May, 1839.<br><br>In the matter<br>of John and<br>Cherry-streets.

IV. Hannah Jackson, Nos. 234 and 235, Pearl-street, and No. 249 Burling Slip. These lots are also assessed for benefit ; and the proofs in support of the objections, that they should not 'be so assessed, or that, at least, they are assessed too high, are open to the same observations as those in the case of Mr. Zabriskie, with some others. Several of the affidavits are incompetent, as being made by Mrs. Jackson and others claiming to be owners. Mrs. Jackson says these lots are assessed in the wrong names, J. & H. Jackson, whereas she is the life tenant, and T. J. F. Jackson, W. H. Jackson and others named, are entitled to various interests in remainder. The mistake in the names would be more important were the assessments for damage. The lots are fully described in the commissioners' report ; several of the persons in interest are actually apprized of the assessment against them ; and probably the mistake will work no prejudice. The real owners are certainly not concluded by it as to their title ; and may raise the lien imposed by the assessment, though their names are, as it seems probable, omitted. The proof of the mistake too, is not very satisfactory. Pretty much all of it comes from the affidavits of persons claiming to be owners adversely to

ALBANY,
May, 1839.

In the matter
of John and
Cherry-streets.

the names in which the property stands upon the report; and, on the whole, I think the report should not be disturbed for the alleged misnomer. In short, I see no adequate ground for requiring a reconsideration of any valuations in this case, beyond what may arise as common to this and Cherry-street, on the power of the corporation to take for their use.

V. Baltus Moore, No. 66 Broadway. All the objectors concur in denying the constitutional right of the corporation to take, as their own private property, a triangular piece of land at the south corner of John-street and Broadway, which would, if the corporation have no right to it, operate as an extension of Baltus Moore's lot 66, which adjoins the triangle (67) on the south. The triangle is set down, in the report, as belonging in fee to *unknown owners*, subject to a right of way; it is reported as *taken* for the purpose of *closing* and *straightening* John-street, and converted, *for that purpose*, to the use of the mayor, alderman, &c. of the city. The commissioners estimate and assess the loss and damage to the *unknown owners* by reason of the closing and straightening, and by and in consequence of the relinquishing of the interest of these *unknown owners* so required for the purpose of closing and straightening, and converting the same, &c. as aforesaid, at the sum of *one dollar*. The commissioners then assess the benefit, &c. of the corporation, in consequence of the triangle being converted to their use, at 15,000 *dollars*. This branch of the report is in virtue of the act of April 20, 1818, Session Laws, of that year, p. 201, Laws relative to the city of New-York, ed. of 1833, p. 714. The act recites that it had been represented by the mayor, alderman, &c. of the city that there were within the city, roads, streets, lanes and alleys, and *parts of streets*, roads, lanes and alleys, which might be *closed* without *detriment* to the public, and that they were willing to pay to individuals all the damages which they might sustain in consequence of *closing* the same. It then provides; section 1, that the corporation may, whenever they shall judge proper, apply to this court, which is required to nominate and appoint commissioners, who are to make an estimate of

the loss and damage to the respective owners, lessees, parties and persons respectively, entitled unto or interested in any lands, tenements, hereditaments or premises, by or in consequence of *closing* any road, street, lane or alley, or *any part* of any road, *street*, lane or alley and converting the same to the use of the said mayor, &c. and to report thereon to this court setting forth the names of owners, &c. as far as the commissioners can ascertain, with an apt and sufficient designation or description of the same. This court, after hearing any matter which may be alleged against the report may refer it back to the same or other commissioners for revisal and correction from time to time; and finally confirm it. The confirmation is declared to be conclusive on the corporation and all persons interested; and, as a consequence, the corporation is declared to be seized in *fee simple absolute* of all such roads, *streets*, &c. or *parts* of such roads, &c. The act provides, section 2, for giving notice to persons interested, who may interpose objections as in the common case of opening or improving streets. It provides, section 3, for enforcing payment against the corporation; and, then after some special provisions, it declares, (section 8,) that whenever, and as often as the corporation shall be desirous to open, lay out or form any street or public place, or to *extend, enlarge, straighten, alter or otherwise improve* any street or public place, which shall be *contiguous to* or *in the neighborhood of* any lot of ground fronting on *any street or part of a street* which they may pray to have closed as aforesaid, they may *unite* the two applications. And in such case, (section 9,) the commissioners are to deduct from the damage of enclosing, the benefit of the new improvement, assessing the balance; the corporation being declared liable for that only. By section 10, the commissioners are to deduct what the property acquired may be worth, if any, over and above what they compel the corporation to pay, from the aggregate value of the improvement, and assess the sum so deducted upon the corporation, but if the sum to be paid by the corporation shall exceed the real value of the fee acquired, the commissioners are to award the amount of the deficiency to the

ALBANY,
May, 1839.

In the matter of John and Cherry-streets.

ALBANY,
May, 1839.

In the matter
of John and
Cherry streets.

corporation, assessing it upon the property of those who are benefitted.

It is not denied that the commissioners have, in the instance under consideration, literally followed the directions of the statute. Their appointment was for the double purpose of straightening and improving John street, under the act of 1813, 2 R. L. 408, Laws relative to the city, p. 722, and of transferring to the corporation a title to the land, from which parts of the old street might be withdrawn, pursuant to the act of 1818. It was contended in argument, that the true meaning of the statute is confined, either to the *total discontinuance*, or the *shortening* of streets, &c., and that it should not be applied to the strips of land excluded by the operation of *straightening*. But these strips are *parts of streets*; and equally capable of *enclosure*, physically speaking, with a whole street, or a part extending from side to side. Beside, § 8, which provides for a union of the two proceedings, seems more plainly to. contemplate that strips on the side may thus fall to the corporation. The question therefore, I think, comes to that which was mainly discussed in argument : whether these provisions for taking land from the owners and transferring an absolute fee to the corporation, be not incompatible with that part of the state constitution which declares that no person shall "be deprived of life, liberty or *property*, without due process of law ; nor shall private property be taken for public use without just compensation." Art. 7, § 7. It was conceded that if this proceeding be not by due process of law, within the meaning of the constitution, and if it be not a taking of property for public use, or in other words, an exercise of the national right of eminent domain, then, so much of the proceeding as reposes upon the act of 1818, must be set aside or treated as a nullity. The question is less material in respect to John than Cherry street, where a similar proceeding has been taken by the corporation, except that they are not taxed on account of the land acquired. The proceeding in the latter street, affects several individuals by interposing narrow strips of corporation property, between them and the straightened street. They complain that the cor-

poration thus acquire the power to injure them, by a wall barring the only access, which they have to the street. Admitting, as the report concedes, and as the law holds, that these strips belong absolutely to private individuals, it does become a question truly important to these residents, if it can be called a question at this day, whether the strips do not result to them as owners *ad medium filum viœ*; and, what is a more delicate, if not a more difficult question, whether they can constitutionally be deprived of their title by a statute transfer of their property to the corporation. I shall reserve the further consideration of this question, till I dispose of some minor objections presented in the case of Cherry-street.

SECOND: As to Cherry-street. This case has been several times before the commissioners, and comes here on appeal from the final report. It contemplates the widening and straightening of Cherry-street, about the whole distance between Franklin-square and Catharine-street. Many of the buildings on both sides must be cut off, to an extent more or less. Between Roosevelt-street and James' slip, on the south side, the proposed street recedes from the buildings, leaving a strip of one, two, three and four feet, &c., at different points intermediate that and the buildings. This strip, the report assigns to the corporation in fee, and all the different parts are appraised as belonging to unknown owners subject to a public right of way. To each set of these supposed unknown owners is awarded one dollar as the value of the land; the adjoining owners, thus cut off from the street, being at the same time assessed for benefit.

I. Some considerations were thrown out in argument against the policy of the improvement, &c. But that was a matter for the corporation to decide. The appeal is not from their doings; and the objection can not, therefore, now be considered. 2 R. L. 408, 9, § 177. Laws relative to the city, ed. 1833, p. 722 to 724. *Matter of Albany-street*, 11 Wend. 149. My impression is that in this respect their decision can not be reviewed in any way, on account of a defect of evidence; though doubtless a *certiorari* would lie

ALBANY,
May, 1839.

In the matter
of John and
Cherry-streets.

for want of jurisdiction, or error on the face of the proceed. ings. *Parks* v. *The city of Boston*, 8 Pick. 218. Besides, the policy of widening and straightening, in some form, is not seriously questioned.

II. Some of the affidavits express an opinion that, to warrant an assessment sufficient in amount to meet the expense of the improvement, it should have been confined to one side of the street; but these opinions come mainly, if not entirely, from parties interested. If otherwise, the opinions are few, and however respectable the deponents, and however enlarged their means of judging, the opinions cannot be received to weigh down those of the commissioners. The objection is perhaps well founded in principle. *Fourth Avenue*, 3 Wendell, 452. But the fact upon which it is to be sustained, must be clearly made out.

III. The same remarks are applicable to the opinion expressed by some of the deponents, that assessments for benefit should have been extended the whole length of Cherry-street, *and that they are two much restricted in respect to* other streets supposed to derive material benefit from the improvement.

IV. A great number of objections are interposed by individuals that, in their respective cases, the damages are estimated *too low*, or the benefit assessed *too high*; and these objections are supported in various ways. In some cases the owners themselves have made and submitted affidavits, giving their own estimates, &c. These are not competent evidence. In a majority of the cases, a few affidavits of disinterested persons are produced, expressing a general opinion as to the amounts of benefit or damage, in conflict with the amounts estimated or assessed by the commissioners. Some of these come from persons holding themselves forth as competent judges, while others make no pretensions to extraordinary skill in such estimates. Others are more particular, basing their estimates on considerations of what they esteem the additional business advantages to be derived from the improvement, or the want of these; the expense consequent upon the necessary removal, contraction, taking down, restoring or repairing of buildings, &c. &c. Admitting the

commissioners to have acted on correct principles, and that they proceeded regularly, (which is denied in respect to the receiving of an unsworn appraisal, made under their direction, a very material paper which I shall hereafter notice more particularly,) I am not satisfied that I ought to remit this report for re-consideration upon any of the objections founded on value. All the proofs mentioned having been regularly before the commissioners, I would presume that they received due consideration ; and so far as they tended to increase the demands of the claimants beyond what was allowed, were met with proper grounds of qualification. With the opportunity of viewing the premises, a local knowledge of the business and character of the street, of the market value of lots and buildings, and indeed all the elements which go to make up an opinion ; or at least the most advantageous means of acquiring the requisite knowledge in all particulars from the best sources; and then the full means of applying their knowledge on consultation, the commissioners have come to conclusions differing from those of the deponents whose affidavits were before them, and are now before me. The commissioners too were sworn, and had power to examine experts on oath : merchants, surveyors, mechanics, &c., adepts in commerce, values, mensuration, removing, building, repairing, &c. and I must intend that, whenever such examination was necessary to solve doubts, it was had. Men of ordinary capacity can hardly go through with such a laborious estimate and assessment, and re-estimate and re-assessment as the one before me, without becoming themselves expert in all the departments of knowledge necessary to the business they are about. In regard to a few of the objections, I admit that the affidavits go into particulars derived from skilful men, and other satisfactory sources, which, under my limited means of judgment, lead me somewhat to doubt the accuracy of the commissioners in the values which they have arrived at ; but I want more to enable me to disturb their report. I repeat, that the estimate and assessment of values belong peculiarly to them, and I cannot set aside their report on the ground of error in this respect, without a case is made

ALBANY,
May, 1839.

In the matter
of John and
Cherry-streets.

ALBANY,
May, 1839.

In the matter
of John and
Cherry-streets.

against them, clear, strong and indubitable. I admit that it is very difficult to make out such a case upon *ex parte* affidavits, which are the sort of proof usually before us in street causes, and I believe it has seldom been done. The proof is, in its own nature, open to much observation, and in common experience calls for great deduction, especially when it comes in the form of mere opinion as to price or benefit, or damage in respect to a projected improvement. The most candid and skilful entertain opinions on these subjects widely different; and I cannot, in this case, place the results thus stated by witnesses, or such as I might myself draw from particulars thus stated, in successful opposition to what I must think the more enlightened views of the commissioners. Mr. Justice Bronson remarked in the matter of *Furman-street*, 17 Wendell, 663, " that the reviews on appeal can, for the most part, extend to error in principle only. When a right rule for making the estimate has been settled, it must, very often, be impracticable for this court to ascertain whether too much or too little has been awarded to any individual for his damages. In the case under consideration, many of the witnesses differ one half in relation to the true value of the land which has been taken for the street; and the court has no adequate means of arriving at a true estimate. We can only interfere with the report where, upon the proof, as it appears by the affidavits, there is a plain and decided preponderance of evidence against the judgment of the commissioners." What judge, commissioner or juror ever sat, what lawyer ever practiced in a court of original jurisdiction where these questions of damage and benefit are daily heard, without witnessing the same conflict, and arriving at the same conclusion. The right rule is seldom mistaken. It is the present and future value in cash, of land, rents, materials and labor. But the premises from which that value is to be drawn, are often so complicated, and above all, the views of witnesses so imperfect, their language so obscure, and the subject itself lying so much in the region of conjecture, that an oral examination and cross-examination, and all other the best means of judging are necessary. *Vid. Commonwealth* v. *The Justices, &c.*

*of Norfolk,* 5 Mass. R. 435, 437. *The same* v. *The Justices, &c. of Middlesex,* 9 id. 388. *The same* v. *Coombs,* 2 id. 489, 492. *Callender* v. *Marsh,* 1 Pick. 418, 432, 3.

I had occasion in the late case of the widening of Pearl street, ante, p., 651, to say something on the weight which I thought due to the class of *ex parte* depositions ; and I think I went the utmost length in that case, if not beyond what I ought to have done. Among other matters, a small piece of land, the Baehr estate, the most valuable in the city, (lying at the corner of Wall and Pearl streets) was carried by the depositions to an amount far beyond what had been allowed, and other commissioners had but just before allowed much higher for adjoining land of the same estate, though apparently of no more real value, which had been taken for a contiguous improvement upon the same corner. I sent it down for re-estimate, and the commissioners allowed an additional amount. This was at a time when prices were at the very highest, and I entertain little question that the commercial revulsion, and consequent fall of prices which soon after ensued, and which the commissioners most probably foresaw more distinctly than myself, would demonstrate that according to the actual result, we both marked too high.

These reports of commissioners in respect to values, are in the nature of a verdict of a jury upon a question of fact, which is never set aside as against evidence, unless it appear affirmatively and clearly to have been unwarranted by the proofs. There is more difficulty in showing this against the commissioners' report, because, from the nature of the proceeding, they must make a more free use of their private knowledge than jurors are warranted in doing. The latter are confined to action upon their general knowledge ; and cannot go on their knowledge of particular facts without being sworn and communicating them as witnesses. *Rex* v. *Rosser,* 7 Carr. & Payne, 648. Admitting every thing, therefore, to have been regular, I should hardly deem the report impeached upon its merits in any matter of valuation.

I should feel myself warranted in coming to this conclu-

ALBANY,
May, 1839.

In the matter
of John and
Cherry-streets.

sion, entirely independent of several *ex parte* affidavits procured by the corporation, in order to sustain the report, without having been laid before the commissioners. These, I think, cannot now be received for the first time. I am sitting as a court of appeal, as much so as if I were to pass upon a return to a writ of error, or a report of referees, or a case for a new trial. It is of the nature of all these proceedings, and so with every appeal, that the proofs under review in the appellate court should be identical with those in the court below. I do not know of any case which holds that a street cause forms an exception. Should we receive new affidavits in support of the report, we ought to receive them against it, and thus, contrary to the statute, resolve ourselves into a court of original jurisdiction. If the intendment which we are bound to make in favor of the adjudications of the commissioners be so strongly encountered by proof as to overcome the report, our course should be to send it back for review by the same or other commissioners. Then the new affidavits can be properly received, and on the motion to confirm the report, they will come before us. If through any accident, an owner of land has failed of a hearing before the commissioners, as by not seeing or hearing of the notice in the newspaper, the report will be referred back for a rehearing, *Dover street*, 1 Cowen, 74 ; otherwise he will be concluded. *Harman street*, 16 Johns. R. 231. In the latter case, the court remarked that, sitting in review over the decisions of the commissioners, they ought not to take into consideration facts which were not before the commissioners previous to their final report. This rule in terms shuts out new affidavits on one side as well as on the other. My opinion in favor of excluding new affidavits offered on the side of the corporation, I find, however, stands alone in this court. In another case now before us, that of *Anthony street*, vide post, a majority of the court, for reasons assigned in that case, are of opinion that they may be received to support, but not oppose the report. That opinion must, therefore, form the law of this court.

As this case of *Cherry street* may come before us again, on questions of value, I have thought it proper to notice the

rules of review by which I think we must be governed, in
street causes where every thing is regular in respect to the
merits, and estimates and assessments are conducted upon
proper principles.

ALBANY,
May, 1839.

In the matter
of John and
Cherry-streets.

But I am satisfied that all the individual objections involv-
ing values of repairs, alterations and removal of buildings
on this street must be reheard, upon the ground that the
estimates of the appraisers were received by the commission-
ers without being sworn to. They appear to have remained
without verification by oath till after two reports were
made up and signed, as was admitted on the argument; nor
was it denied that the commissioners relied on this appraisal
as a material means of information. To what extent it
may have affected the whole proceedings is impossible to
say. These proceedings are usually *ex parte* up to the time
when the report is signed, deposited and advertised. Parties
are not before the commissioners, so that we can impute
a waiver of formality in the proofs, as on an ordinary
trial or reference; and where the duty of inquiry is, as it
must often be, delegated to skilful men in order to elicit
information upon numerous and important particulars, their
report should not be received and acted upon till after it is
duly verified by their oath. Here is no room for intending
that the commissioners governed themselves by other lawful
means of inquiry. The counsel for the corporation admits
that this report formed a ground of action, and it relates
to numerous and important interests. The appraisers come
as *witnesses*, and regularly should have been sworn by
the commissioners, who doubtless have the ministerial
power to administer oaths to witnesses at the common law;
but the power is also, in this instance, expressly given by
statute. Laws relative to New-York city, ed. 1833, p. 748,
938. Act of April 20, 1818, Sess. 41, Vol. 4, c, p. 196.
That the commissioners may add to their stock of knowledge
necessary to the proper discharge of their duties by proper
inquiries addressed to persons not on oath, may be ad-
mitted, *Spring Garden street*, 4 Rawle, 192-4, but coming
to the particular damage of cutting away buildings on a
street, &c., if they do not themselves personally perform

In the matter
of John and
Cherry-streets.

the duty of inspection and appraisal, they should take the oaths of witnesses. In the case cited, of Spring Garden street, the inquest which appraised the damages, on a view of the property, conversed with the owners of adjoining property in the absence of the parties interested; and the supreme court of Pennsylvania would not, for that reason, set aside the inquisition. They said " an inquest of this sort is restrained to no peculiar species of evidence, and may resort to any source of information which the members of it may think proper—even the evidence of their senses.". But the inquest there had a personal view, and were themselves making an appraisal. They had not, as in the case at bar, delegated the duty of making specific estimates to others, on views to be had by the latter, and to be acted upon as independent and controlling evidence. There is a wide difference between this and such incidental information from citizens and adjoining owners as may serve to explain what can easily be ascertained either by actual observation of the commissioners, or through others, who should clearly be sworn as witnesses. In the case at bar, the report of the appraisers seems to have been sworn to for the use of this court on the appeal, and presented, among other affidavits, to sustain the valuations of the commissioners. I have before shown why in my judgment it cannot be received in this point of view, though the force of the last reason is destroyed by the opinion of a majority of this court in the case of Anthony-street.

The question remains whether the reports as to both these streets must not be referred back for re-consideration in respect to those lands which were awarded in fee to the corporation as its private property. If so much of the proceedings as relate to such lands be void, it was yet supposed by the counsel for the corporation that the report might stand at least for the residue. But it is evident that, if so much fails, it may result in the necessity of material alterations throughout. It seems to me that must be so of Cherry street, wherein the damages will be less, and the benefit greater in respect to a considerable number of lots, provided the land from which the street is to be withdrawn result, as it will, to the adjoining owners. It may be differ-

ent in respect to John-street, wherein there was, I think, but a single individual mentioned, as affected by this claim of the corporation, the latter being assessed in respect to the land awarded. But I can not say with certainty, that collateral alteration will not be necessary to some extent here, as well as in the case of Cherry-street.

The important question is, whether the act of 1818 be constitutional. I have before stated the material provisions of that act, with the manner in which the corporation now seek to apply it, and the reasons why I think it does apply in its terms and spirit to the side strips of land awarded by the report to the corporation. I have also stated that part of the constitution with which it is supposed to conflict. The report concedes that the land thus awarded does not belong to the corporation, but to individuals who are denominated *owners unknown.* Upon what principle or what authority the commissioners concluded that the adjacent owners had no title, I am neither informed by the report, nor was any reason given on the argument. These streets are admitted to be ancient. They were not laid out under the statute which gives a fee to the corporation in trust for the public use. Sess. 30, ch. 115, § 9. 2 R. L. 414. Vide *Matter of* 17*th street,* 1 Wend. 262, 269, '70. There the seizin of the owner may perhaps be in subordination to the trust fee of the corporation. But it can not be denied that the rules of law by which the rights of owners adjacent to other public highways are governed, apply with full force to the streets now in question. These rules are that the adjoining owner is, *prima facie,* and indeed of common right, also owner to the centre of the road, subject to the public right of way only. Woolrych on Ways, 5, 6, and the cases there cited. 3 Kent's Comm. 432, 3, 3d ed. and cases there cited. And it follows that when the way is discontinued in part or in whole, the land over which it ran results *pro tanto* in full and unqualified dominion to the adjacent owner. *Hooker* v. *The Utica & Minden T. P. R. Co.,* 12 Wendell, 371, 3, per Nelson, J. The proprietors therefore have at least been misnamed, and the compensation improperly awarded in this respect, admitting the statute to be valid.

ALBANY,
May, 1839.

In the matter
of John and
Cherry-streets.

The adjoining owners should have been named and paid. I before remarked that where *damages* are to be paid, names become more material than where a charge is made for benefit. By an English statute, on laying out a new public way, the old must be sold to the adjoining owner, Woolrych on Ways, 60; and in that country no doubt the parliament would have power to divest the owner of all claim to any of his land, and even transfer it to another. Magna Charta forbids the transfer, by providing that no man shall thus be ousted, but by the law of the land; yet the charter is no more than a statute; and never was understood to stand absolutely in the way of the legislature. Under the provisions of our own constitution, property can not be thus transferred unless it be taken for public use, nor then except on payment of, or provision for a just compensation. Accordingly in *Albany-street*, 11 Wend. 149, it was held that a statute, making provision for transferring to the corporation of New York, a title to the fragments of lots which had been broken, in laying out streets, though the same statute required compensation to be made, was void, on the ground that the land was not taken for public use. The late Chief Justice there said that the clause withholding private property from public use unless with compensation, in itself implies that it shall not be taken for individual use, and such I think is still more clearly the meaning when that clause is considered in connection with the preceding one inhibiting a deprivation of property without due process of law. This clause is an enlargement and extension of the words in Magna Charta, ch. 29 : " No freeman shall be disseised of his freehold, &c., but by the law of the land." These words " by the law of the land," as said by Coke, 2 Inst. 50, are properly rendered " due process of law," among which he mentions the writ original at the common law, the ordinary mode of commencing a suit, to try the title, and see 3 Story's Comm. on the U. S. Const. 661, § 1783. Our constitution adopts the very words of Coke ; and means undoubtedly by that, to work a change of property from one private person to another some proceeding must be had in a court of justice or before magistrates ; at least that the

legislature should have no power to deprive one of his proper-
ty, and transfer it to another by enacting a bargain between
them, unless it be in the hands of the latter, a trust for public  In the matter
use. The Chief Justice in the case of Albany-street, adds  of John and
Cherry-streets.
what is very obvious, that the quantity of land intended to be
taken by the statute can not vary the principle ; and that the
legislature are incompetent to dispose of private property in
this manner, whether in feet or inches. I can not bring my-
self to doubt that the case cited was decided upon correct
grounds judiciously applied ; nor have I been able to distinguish
the present from that case.

It is said that the city of New-York is a *public corporation,*
and that therefore all its property is for *public use.* The ar-
gument is equally applicable to all municipal corporations, by
which the state is covered. If it be good for a city it is equal-
ly so for a county, town or village, all of which may become
legislative purchasers on summary appraisal, and then sell out
to individuals using the avails for the good of the corporation.
Such a construction would make the constitutional clause a
dead letter. Beside, this argument is answered by the case of
Albany-street.

It is said also that much property has from time to time
been taken at nominal prices by the corporation under the
statute in question ; that they have always sold to the adjacent
owners at the nominal prices which they gave, and will doubt-
less do so in this instance. But they *may* refuse, and sell to
third persons. Laws of this character, like all others, are
made to guard against what people may do ; and not trust to
what they will do.

It is further urged, that closing *part of a street* is as much
a public purpose as the opening or widening ; that correcting
the sinuosities of the sides of the streets, which arise from the
alternate receding and projection of buildings, is necessary for
the public convenience. The plain answer is, that, admitting
the convenience, an absolute fee in the corporation is not
necessary for the purpose. The sides can be rendered straight
by a fence, to be continued till the building shall be carried
out to the street line. The argument would, in its utmost
force, entitle the corporation even to build a fence no longer

than the irregularity of the street boundary continued; and the land should be taken avowedly for the purposes of the public highway. But the object proposed, if really necessary, would probably come within the general power commonly granted to municipal corporations, of repairing or amending highways lying within their territorial jurisdiction. The fact of convenience is also left in doubt. No such object is pretended in the petition recited by the preamble of the statute.

The result is that the report in the case of both John and Cherry-streets must be referred back for reconsideration and correction, by assigning and assessing the lands now awarded to the corporation, to the adjacent owners.

And in the case of Cherry-street, the report must be referred back generally for reconsideration as to all the objectors.