MATTER OF CENTRAL PARK EXTENSION.

*Supreme Court, First District; At Chambers, April,* 1863.

EMINENT DOMAIN.—COMMISSIONERS OF ESTIMATE AND ASSESSMENT.—CONSTITUTIONAL LAW.—ERRONEOUS RULE IN ASSESSMENTS.—"UNKNOWN OWNERS."—INCHOATE RIGHT OF DOWER.—PECUNIARY INTEREST IN LAND.—WAIVER.

On a motion to confirm the report of commissioners appointed in proceedings to acquire private property for public purposes, the court cannot entertain objections as to the amount at which the property taken was assessed, nor to the amount awarded as damages, unless some erroneous rule of valuation has been adopted other than a mere mistake of judgment, or there has been committed some gross wrong or glaring mistake in making the estimate.

It is the duty of such commissioners, in case of conflicting claims of title to the property taken, to decide upon such claims, and award the damages accordingly.

In taking land in a city for public purposes, it is erroneous to award merely its value as farming land, on the ground that the same is already a public street.

Although it is the duty of the commissioners to award damages directly to the owner, in case his title is sufficiently established, and not to "unknown owners;" yet, where the amount of the award is small, and the owner can have adequate relief by proceedings to obtain the fund, the court will not send back the report for correction in this respect alone.

It is within the power of the Legislature to designate any one to institute proceedings to acquire private property for public purposes.

Thus where the commissioners of the Central Park in the city of New York, a recognized public body, were authorized to institute such proceedings, the question whether such a body had, apart from this authority, a legal existence, is immaterial.

Under the Laws of 1859, ch. 101,—which provide in § 2 for the appointment of commissioners of appraisal for the purpose of acquiring land for a park in the city of New York,—such commissioners have power to assess adjoining property for the improvement. The intent of the Legislature is clear, from § 9,

which provides that the city shall pay awards for damages "over and above the sums that may be assessed" on the parties benefited.

Such commissioners are not obliged to confine their assessments within the distance of half a block from the improvement. This restriction in the act of 1813 is removed by Laws of 1815, ch. 152.

There is nothing in the act of 1859 to warrant the appointment of a separate board to assess the benefit of the improvement to the neighboring proprietors. The commissioners of appraisal are the same persons as the commissioners of estimate and assessment therein mentioned.

The objection that the act does not designate the number of commissioners is unavailing. The number was already fixed by general statutes, or the court would have power, under section 7 of art. 1 of the Constitution, to fix the number at not less than three.

The right of eminent domain exists in this State.

An inchoate right of dower is not an interest in real estate. *So held*, where private property was taken for public purposes, the value of the property being therefore awarded to the husband.

*It seems*, that a lien by mortgage is not a pecuniary interest in land.

The Laws of 1859, ch. 101, § 8, provided that in proceeding to acquire certain land for public use, commissioners should be appointed, no one of whom should be owner of, or pecuniarily interested in, land within certain territorial limits. One of the commissioners selected held a mortgage on land within the prohibited district : after his appointment he assigned the mortgage. On motion to confirm the commissioners' report ;—*Held*, that the proceeding was valid on the grounds that :—1. The objection should have been raised at the time of the appointment. 2. The Constitution vests a general power of appointment in the court, which cannot be restricted by the Legislature. 3. The provision is merely directory. 4. The interest was removed before making the report.

Motion to confirm the report of commissioners appointed to acquire land for a public park.

This was an application by the Board of Commissioners of the Central Park, in the name and on behalf of the mayor, aldermen, and commonalty of the city of New York, relative to the acquisition of lands for a public park or place between the southerly side of One-hundred-and-sixth-street and One-hundred-and-tenth-street, and Fifth and Eighth Avenues, in the city of New York.

Three commissioners had been appointed, who now presented their report for confirmation. Numerous objections were made, which will sufficiently appear from the opinion.

*Abraham R. Lawrence, Jr.*, for contestants.—I. The alleged commissioners of the Central Park, who make the application in this proceeding, have no legal existence, and are, therefore,

incapable of having any standing in court. 1. The act of 1857 (2 *Laws of* 1857, 714), under which the .commissioners were appointed, is void, because it conflicts with art. 10, § 2, of the Constitution. (People *a.* Draper, 15 *N. Y.*, 532, 539.) 2. The objectors insist that the powers and duties confided to the commissioners of the Central Park were, at the time of the passage of that act, and also at the time of the adoption of the Constitution of 1846, confided to the mayor, aldermen, and commonalty of the city of New York. The Central Park is one of the public squares or parks of the city of New York. (*Laws of* 1853, ch. 616.) And the act under which the proceedings for the acquisition of the land composing said Park were originally taken, declares the same to be a public place in like manner as if the same had been laid out by the commissioners appointed under Laws of 1853, ch. 616. Now, at the time of the passage of the act of 1857, and at the time of the adoption of the Constitution, the .control over and title to, and the right to regulate the public squares, streets, and avenues laid out under the act of 1807, was vested in the mayor, &c., of the city of New York. (*Davies' Laws*, 534.) The act of 1857, so far as the Central Park is concerned, vests the control and regulation of that park in the said commissioners. The change is merely a colorable one; the commissioners are the old corporate officers under a new name, and within the principles laid down in the case of People *a.* Draper (15 *N. Y.*, 540), such officers must either be elected or appointed by the electors or the authorities of the city. (*Act of* 1813, § 177; People *a.* Draper, 15 *N. Y.*, 532, 540.) 3. Even if the objectors err in the point just taken, and if it be granted that the alleged commissioners of the Central Park are new officers, and not the old corporation officers under a new name simply, the act in question is still unconstitutional, under the last clause of section 2 of article 10 of the Constitution aforesaid: the Legislature are only permitted to direct whether a new office, which they have created, shall be filled by election or appointment, and to designate who shall exercise the electing or appointing power. They have no power themselves to appoint to the office thus created.

II. These objectors also insist that the act of April 2, 1859, under which these proceedings are instituted, is in conflict with the Constitution, because, while it transfers to the commis-

sioners the power in relation to applying for the opening of a public square or place which is vested in the Corporation of the city, it does not provide that the said commissioners shall be appointed by the city authorities, or elected by the electors of the city. (People *a.* Draper, *supra.*)

III. The act of 1859 does not authorize the appointment of commissioners to make an assessment upon the property deemed to be benefited by the proposed extension of the Central Park. The commissioners mentioned in the act of 1859 (*Laws of* 1859, 282, ch. 101) are denominated commissioners of appraisal. We cannot assume that this departure from the ordinary name of the commissioners appointed in street proceedings was meaningless. The conclusion is irresistible that such departure was with a distinct purpose, and that the reason why the commissioners to be appointed by the court are denominated commissioners of appraisal is, that the Legislature intended that the whole expense of the acquisition of the lands in question should be borne by the Corporation, or by the Central Park commissioners. In such case, there would be no necessity for the appointment of commissioners to make an assessment, the only fact necessary to be ascertained being the value of the land proposed to be taken, which fact the commissioners of appraisal would determine.

IV. All the proceedings in this case are void, inasmuch as Mr. Ulshoeffer, one of the commissioners, was appointed in direct violation of the provisions of the act of 1859. It appears that Mr. Ulshoeffer held at the date of his appointment a mortgage on land in 47th-street. It must be borne in mind that the proceedings herein are purely statutory, and that they are in derogation of the common law, and that the statute must be strictly followed, or the whole proceeding will be void. (Sharp *a.* Johnson, 4 *Hill*, 92 ; Sharp *a.* Speir, *Ib.*, 76 ; Doughty *a.* Hope, 3 *Den.*, 594 ; S. C., 1 *N. Y.*, 79.)

V. The act of April 2, 1859, contemplates the appointment of two commissioners. 1. Commissioners to appraise the value of the land to be taken, which commissioners are to be appointed as prescribed in section 4. 2. Commissioners to estimate and assess the benefit derived from the improvement by parties whose lands are not taken. Such commissioners are to be appointed in the manner and on the notice prescribed by

the general acts of 1813 and 1839.   And the commissioners of estimate and assessment, if any such commissioners are authorized by the act, were intended to be appointed on the application of the mayor, &c., of New York, independently of the application made by the commissioners of the Central Park.

VI. The act of April 2, 1859, is in conflict with article 1, § 7, of the Constitution.   It is clear that whenever the Legislature authorizes the taking of private property for public use (when compensation is not made by the State), it has power, under the above section, to do three things :   1. To prescribe whether the compensation to be made to the party whose property is to be taken, shall be ascertained by a jury.   2. To prescribe whether such ascertainment shall be made by commissioners instead of a jury.   3. If they determine that the ascertainment shall be made by commissioners, to prescribe also the number of the commissioners, not less than three, by whom such ascertainment shall be made.   The act of 1859, nowhere prescribes the number of the commissioners.   Even if the act can be said by implication to specify the number of commissioners of appraisal to be appointed by the court, the only implication that can be drawn from the act in that respect is, that six commissioners of appraisal are to be appointed.   (§ 5.)

VII. The property belonging to Wood and Palmer should not have been assessed in any amount whatever, for the reason that none of the said property fronts on the said extension of the Central Park, or lies " at or within half the distance of the next street or avenue on either side thereof."   (*Act of* 1813, *Davies' Laws*, 530.)

VIII. The assessments imposed upon the lands of these objectors are excessive and exorbitant, as will be readily seen by a reference to the comparative statement of the assessments imposed on said lands for the opening of Central Park, and those imposed for the extension.

IX. The awards given to those whose lands are taken are exorbitant.

X. The objectors insist that the fair construction of the act of 1859 is, that no assessment was to be imposed upon the owners of the property not taken, to defray the expenses of the acquisition of the land taken for the improvement.   That it is clear from the whole tenor of the act that merely the damage

to parties whose land was to be taken was to be ascertained, and that such damage was to be paid to them by the commissioners of the Central Park or by the Corporation.

*A. R. Dyett, D. E. Wheeler,* and *W. D. Murphy,* for other contestants.

*Henry H. Anderson* and *John E. Burrill* for the commissioners.—I. There was, in fact, at the time of the passage of the act of 1857, a body known as Central Park Commissioners, and such a body has, in fact, existed from that time to the present. It was competent for the Legislature to create such a body—to make it a corporation—or to constitute a body for police purposes over a limited or a new geographical district, as this body now is, the district being " the Central Park." (People *a.* Draper, 15 *N. Y.,* 532.) The power of the Legislature is unlimited, except so far as it may be restricted by the State or Federal Constitution. (Leggett *a.* Hunter, 19 *N. Y.,* 445; Bank of Rome *a.* Village of Rome, 18 *Ib.,* 38.) But the act of 1857 does not appoint. The persons named in it are, by the terms of the act, continued in office. This is clearly within the power of the Legislature. (People *a.* Batchelor, 22 *N. Y.,* 128; 2 *Laws of* 1857, 715, § 3.) Even if the view of the counsel for the contestants is correct *non constat* but the commissioners were all appointed by the mayor of the city of New York, with the consent of the board of aldermen. It is no new thing for the Legislature to authorize land to be taken or acquired in behalf of the mayor, aldermen, and commonalty, on the application of other persons, whether by proceedings in court or by purchase. (*Laws of* 1833, ch. 36; *Laws of* 1834, ch. 256; *Laws of* 1849, ch. 383; *Laws of* 1853, ch. 501.) The office of Central Park commissioner was created subsequently to the Constitution of 1846. The Legislature has, therefore, by the very section upon which the objection now considered is based, control over the appointment of those officers. But it is of no moment in this proceeding whether the original appointment of Central Park commissioners was or was not valid. These individuals, or commissioners, in this matter, performed a ministerial act. It is competent for the Legislature to delegate this power to whom it pleases.

(Bloodgood *a.* Mohawk Co., 18 *Wend.*, 9; Buffalo Co. *a.* Barnard, 9 *N. Y.*, 100; Hayward *a.* Mayor, &c., of N. Y., 7 *Ib.*, 314; Morris Canal & Banking Co. *a.* Townsend, 24 *Barb.*, 658; Benedict *a.* Goit, 3 *Ib.*, 459.)

II. As to the objections that the act of 1859 contemplates the appointment of two commissioners, and that the commissioners of appraisal are not authorized to assess—incorporate the act of 1813, and the acts amendatory, into the act of 1859, § .2, and the objection no longer exists. Section 9 removes any possible doubt, for the damages are to be awarded by the commissioners of estimate and assessment, who are, therefore, necessarily the commissioners of appraisal.

III. The objection that the court was not authorized to appoint commissioners to assess, and the order of court therefore void so far as it authorizes an assessment, should have been raised by an appeal from the order appointing the commissioners, given by section 5 of the act. No appeal having been taken, all parties are concluded by the order there made.

IV. It is immaterial whether the names of the real owners are or are not inserted in assessments for opening streets and squares. (*Act of* 1813, § 178; William & Anthony streets, 19 *Wend.*, 678; John & Cherry streets, *Ib.*, 657; Paillet *a.* Youngs, 4 *Sandf.*, 50.) The objectors have shown no reason for inserting their names. But an examination of the report of the commissioners shows that it had been corrected in this respect.

V. By the Constitution, the court are to appoint "not less than three." Unless otherwise provided, the number of commissioners is discretionary with the court, provided the number be not less than three. (*Acts of* 1813 and 1839.) These acts direct the appointment of three commissioners. The provision in section 5, as to the nomination of these persons by the Park commissioners, and these persons by the owners, is a modification of section 2 of the act of 1839, which provides that the Corporation shall nominate three persons, any person interested one person: that the persons so nominated shall form a list, from whom the court shall appoint commissioners, &c.

VI. To the objection that the property had been assessed before, and present assessment upon objectors' property excessive— the commissioners are the sole judges of benefit.

VII. The provisions of the statute of 1859, in regard to the pecuniary interest of the commissioners is merely directory, and a mortgagee has not an interest in the lands within the meaning of the statute. He has merely a lien analogous to that of a judgment-creditor. The mortgage was assigned before the assessment was made. The objection cannot be made available at this stage of this proceeding. It should have been made at the time of appointment; and if not allowed, the order of appointment should have been appealed from, as provided in the act. The objections made to the assessment by the party now objecting to confirmation, were considered by the commissioners, after the supposed interest ceased, and the report of the commissioners is now free from any possible objection on the merits, based on this alleged disqualification.

VIII. The various objections, that the awards are excessive, and that property assessed for the original Park should not be assessed for the extension, are all matters to be determined by the commissioners.

INGRAHAM, J.—On the hearing of the motion to confirm the report of the commissioners in this case, various objections have been raised to the report. Of these objections, none were argued as to the amount at which the property taken was appraised, nor to the amount assessed as damages, excepting so far as the latter might be included in the objection that the area of property benefited had been made too large, although such objections were submitted to the commissioners. These grounds of objection cannot be entertained by the court. Unless some erroneous rule has been adopted, other than a mere mistake of judgment in estimating value or damage, or some gross wrong or glaring mistake in value has been committed in making the estimate, the court cannot interfere. How far the assessment for benefit should be extended is a question of fact, for which the commissioners are especially selected. Although I might differ from them, and think they have extended that assessment further than was proper, or that there was a hardship in assessing a second time property which had been assessed for the Park in the first instance, still such difference of opinion would not justify me in refusing to confirm the report. (17 *Wend.*, 649.) The first objection which

I deem necessary to examine is, that the commissioners have awarded damages for the land taken, to individuals named in their report, when their title was contested by others, and that they should have awarded such damages to unknown owners.

By the statute it is made the duty of the commissioners to ascertain the owners of the property, and to award to such owners the damages. While this examination would have no binding effect as to title, and the commissioners therefore could not in reality try the title between the claimants, still it is their duty to ascertain the real owners by inquiry and examination; and if the evidence produced to them is satisfactory, the duty is equally plain to award the damages to such persons, even though claims are presented by other persons. There is nothing in the cases cited (19 *Wend.*, 659; 8 *N. Y.*, 110) that sustains the grounds taken. On the contrary, in the Matter of John & Cherry streets (19 *Wend.*), the report was sent back to the commissioners to correct their report in awarding to owners of lots parts of the street which were claimed by the Corporation; thereby requiring the commissioners to decide between the claimants.

If the commissioners should err in awarding to the wrong persons the damages, no injury can accrue. The true owner can recover the money, if paid, or may by injunction stay the payment, and have his claim investigated as fully when he is claimant as when he is respondent.

From the papers it appears that the commissioners fully satisfied themselves as to the owners, and have made their award accordingly, and I see no reason to interfere with the report on this ground.

An objection is made on behalf of the Sisters of Charity that they owned part of 106th-street, which has been taken and has been valued only as farming land. If this was conceded on the part of the commissioners, the report should not be confirmed. This would not be a case of difference of opinion as to the value, but of the application of a rule of law to the mode of valuation, which is properly to be reviewed by the court.

It does not appear that the objectors owned any property on the north side of what was formerly laid out as 106th-street. If such had been the case, and the commissioners had awarded to

them the value of the lots on the north side of the street as fronting upon a street, we might conclude that in such valuation the value of the street was included.

It was urged on the part of the commissioners, that the value of the street was awarded in the taking of the lots on the south side of the street when the first report was confirmed. But that award can have no effect on this proceeding. It gave no title to 106th-street. It deprived the owners of no right in the land in 106th-street. That land still remained the property of the objectors. The subsequent statute for extending the Park, closed the streets by laying out the whole piece as a public park. After the passage of this law, these lots ceased to be in a public street; that land was no more liable to be used for a street, and all the rights which might have grown up in regard to it, arising from its being laid out as a public street, ceased. It was in the same condition as all the rest of the land within its limits, and was no more to be considered as farm land than any other portion of the land to be taken. None of the lots were lots fronting on streets after that act was passed, excepting those on 5th and 8th avenues and on 110th-street; and they were to be paid for in the same manner, irrespective of the moneys paid for lots on the south side of 106th-street. If the former commissioners allowed too much for those lots on the former proceeding, the loss must fall on those who had to pay for the land at that time. There is no authority in this proceeding to charge any part of that payment on the owners of the land now to be taken. I have examined this question irrespective of the rule which has on several occasions been adopted by commissioners in paying for lands taken for a street, to allow for such land only its value for farming purposes. I know of no rule or law to sanction such a proceeding. To hold that the Legislature by laying out a street over a man's land may thereby destroy its value, would be to sanction taking private property for public use without compensation. It may very well be that where the owner of the street is the owner of the adjacent lots, and they are appraised on the supposition that the street is his also, that a lower estimate may accordingly be placed upon the land in the street. But when all the land owned by the party lies in the street, and he has none on either side of it, there is no law, and I think no authority in the

Legislature to pass a law, to take away from the owner the land at less than its fair value, and no power to destroy or diminish that value by laying out a street over it, so as to compel the owner to accept for it less than its value otherwise. Upon examining the report, however, as to this land, I find that the part taken was without any front on any road or street, and can only be valued as rear ground. Such value is far below what it would be had the land fronted on a road or street by which access could be had to it. I find also that after the objections were served, the commissioners increased the amount awarded fifty per cent. Although I think the amount allowed is a small allowance, still I cannot say that the commissioners have adopted any erroneous rule in this valuation.

These remarks apply to the objections made by D. E. Wheeler, as to land in 108th-street.

But in addition thereto, it appears that Mr. Wheeler is the owner of land on the side of the street, and the commissioners may have allowed the value of the street in fixing the value of the adjoining lots. If so, the report should properly have included the portion of the street with the lots. The omission to do so, however, is no ground for sustaining the objection or refusing to confirm the report, as an allowance has in addition been made for the street. Another objection of Mr. Wheeler is, that being the owner on Harlem Lane, he is entitled to be paid for half of that road. The award is made to unknown owners. In the Matter of John &. Cherry streets, it was held that the owner of the adjoining land was entitled to half of the street, if closed, and the report was sent back for correction in that respect, the award having been made to unknown owners. (19 *Wend.*, 659, 676.) Harlem Lane is an old road, not coming within the statute, which vests the title in the Corporation. That piece of land ceases to be a public road when used for a park. The owners are entitled to be paid for it, and I know of no reason why the adjoining proprietor has no title to the centre of the road. None was stated on the argument, and in the absence of any valid claim by others, the commissioners should award to the owner its value. In this report, the award for damages for the street is made to unknown owners. I do not know what claims were presented, and if the owner would be the loser, I should be disposed to send the report back for cor-

rection in this particular; but as the only effect of the award being made in this way will be to render an application to the court necessary on the part of Mr. Wheeler, I do not think it advisable, for so small an amount of labor, to cause the great additional expense which would follow. He can obtain the amount so awarded, but in a different way.

It is objected on behalf of Messrs. Wood and Palmer, that the whole proceeding is void for want of jurisdiction. This objection is based on the allegation that there is no such body as the commissioners of the Central Park, and therefore the Legislature could not authorize them to take proceedings for this purpose.

I do not deem it necessary to examine into the question of what powers can be vested in these commissioners. They were in office, as such, under provisions of law. While so discharging their duties, the Legislature authorized them to perform others. This was sufficient to designate the persons who were to act, and to confer upon them power to take these proceedings. The statute authorizes these commissioners, acting on behalf of the mayor, aldermen, and commonalty of the city of New York, to acquire this land for the public use. It is immaterial, therefore, to inquire into the legality of their original appointment. They are designated to act, and it is just as valid for the Legislature to designate that body to make this application, as it is to say that the counsel of the Corporation shall take such proceedings as many statutes have provided. So long as there is a person acting in that capacity and recognized as such, they have a right to act under the provisions of this statute, and an inquiry into the original mode of their appointment would be improper. That inquiry can be made on a writ of *quo warranto*, but the authority conferred on them would not affect the legality of this proceeding.

The suggestion that the commissioners have rights formerly vested in corporation officers, is without force. There never had been such a board in existence previously to the adoption of the Constitution, and there is nothing which prevents the conferring on them similar powers to those which had been previously exercised by other officers. The Central Park was not in existence at that time, and no such officers and no such powers had ever before been conferred on any local officers, as

those to perform which these commissioners were appointed. Nor had the Corporation any grant of this right which could not at any time be conferred on others. The object was to take lands for the Corporation. The time of taking, and the agents to be used for that purpose, were purely a matter within the power of the Legislature, to be granted and taken away at their pleasure.

It is also objected that the act does not authorize an assessment for benefit, and urges that the title given to the commissioners, viz., commissioners of appraisal, is evidence of such intent.

The title usually given has been, commissioners of estimate and assessment; but I see nothing in the change to warrant such a conclusion.

The word *appraisal* here used is sufficiently comprehensive to embrace both duties.

It is as much an appraisal to estimate the benefit as the damage. The 9th section of the act of 1859 removes all doubt on this subject. That section provides for the payment of the awards for damage by the city, " over and above the sums that may be assessed by the commissioners upon the parties deemed by them to be benefited," &c.

There is no room to doubt as to the intent of the Legislature to confer upon the commissioners power to assess for benefit.

Besides this, the 2d section of the act makes all the provisions of the act of 1813, and of the acts amending that act, so far as they apply to public squares, applicable to this case, in the same manner as if this land had originally been laid out as a public square.

I think there can be no doubt as to the power to assess for benefit as well as to award damage.

There is nothing in the act which would warrant the appointment of a separate board to assess the benefit. On the contrary, I think the statute clearly shows that both duties were to be performed by the same commissioners.

The objection that the statute does not designate the number of the commissioners, is also unavailing.

That act is to be read in connection with the act of 1813, and other acts, in which the number is designated. Even if it was not, and the act directed the application to be made for the ap-

pointment of commissioners, the court would then have the power to fix the number—not less than three, as provided by the 7th section of the 1st article of the Constitution. It would not be necessary for the statute to designate the number.

The objection that the act of 1813 confined the assessment to half of the block from the street or avenue where the improvement is made, is obviated by the 1st section of the act passed 11th April, 1815, ch. 152, which says the commissioners may extend their assessments to any such lands, &c., as they may deem to be benefited by the opening of such public square or place, notwithstanding such lands, &c., may be situated without and beyond half the distance of the next street or avenue thereto from such public square or place. (*Davies'* *Laws*, 584.)

It is also objected by Mr. Murphy that the right to take land for public purposes was taken away by the provisions of the Constitution, that the right of eminent domain was not recognized therein, and therefore the whole proceeding was void.

I do not understand the clauses referred to in the Constitution as having such an effect. On the contrary, this right has been repeatedly recognized and enforced by the courts since that period. Besides, the 7th section of the 1st article of the Constitution expressly recognizes the right to take private property for public use, on payment of compensation therefor.

Mr. Murphy also objected, that a title would not vest in the Corporation, because no allowance was made for the right of dower which was held by the wives of some of the owners of the fee therein.

This question was discussed and settled by the Court of Appeals in Moore *a.* Mayor, &c., of N. Y. (8 *N. Y.*, 110), in which the court held that the inchoate right of dower was not an interest in real estate. Judge Gardiner says: "It is not of itself property, the value of which may be estimated, but an inchoate right, which, on the happening of certain events, may be consummated, so as to entitle the widow to demand and receive a freehold estate in the land, if she survived her husband."

It might have been added to that case, that the right was transferred from the land to the money received for the land by the husband, if the wife survived him.

The only remaining objection which was argued before me

was as to some supposed interest of one of the commissioners in land above 42d-street.

The papers show that one of the commissioners held a mortgage on some property on 47th-street. It also appears that before hearing and passing upon the objections to the report, the commissioner disposed of his interest in the said mortgage.

It may well be doubted whether this is such an interest in the land as was intended by the provision of the act.

It is designated as a pecuniary interest in the land; an interest which can be affected by the rise or fall in the value of the land. Here it is a mere security for the payment of a debt. If that debt is owing by a responsible person, who is able to pay, the holder of the mortgage has no such pecuniary interest in the land as can be increased or diminished by a rise or fall of its value. The interest, if any, is very remote. But I think there are other reasons why this objection cannot now be taken :

1. The objection should have been taken when the commissioners were nominated to the court. This commissioner was appointed at the request of some of the owners. His name was publicly stated by them, and the objection should then have been made. The only questions now before the court are as to the proceedings of the commissioners, and not their qualifications.

2. I doubt whether the Legislature can annex any such condition to the appointment of commissioners. The authority to make the appointment does not rest upon the statute, but upon the Constitution. The 7th section of 1st article vests the power of appointment in the court. If this restriction upon the exercise of the power can be imposed, others may be, and the right thus conferred by the Constitution be destroyed.

3. The provision of the statute is merely directory. It may have been, if valid, a good reason to apply for a change of the commissioner, but was not a jurisdictional matter to affect the validity or regularity of the proceedings.

4. The removal of the interest, if it existed before making the report, is also a sufficient answer to the objection now.

My conclusions, therefore, are, that there are no objections stated to call for a refusal to confirm this report.

The only objection that can be sustained, that as to the land in Harlem Lane, applies to a small sum, and can be entirely

obviated at a small expense in applying to the court for an order directing the payment to him of the money, instead of to unknown owners.

As the amount is very small, the interests of all parties will be best promoted by leaving him to make that application.

The report is confirmed.