By the Court.
Mason, J.
The plaintiff founded his claim to recover in this cause upon three grounds.
I. That the assessment for fencing, &c., had not been laid upon, the owner or occupant of the lot.
*54 2. That the advertisement of sale was not in the name of the owner or occupant.
3. That the notice to redeem required by the act of May 25th, 1841, was not given according to law.
I. The 175th section of the act of 1813 in relation to this subject, (2 R. S. 407,) directs a just and equitable assessment of the expense of various improvements, of which the fencing of vacant lots is one, to be made “ among the owners' or occupants of all the houses and lots intended to be benefited thereby.” The assessment, when made and ratified by the common council, it is provided by the same section, shall be binding and conclusive upon the owners and occupants of such lots so to be assessed respectively, and shall be a lien and charge on such lots, and “ such owners or occupants” shall also be liable to pay the assessment 'on demand, and in default of payment, the amount may be collected by distress and sale of (heir goods and chattels.
The act of April 12th, 1816, (Laws of 1816, ch. 115, § 2, p. 114,) provides that, whenever any assessment upon any lands or tenements in this city shall be unpaid, and the collector shall make affidavit of his demanding the money two several times of “such owner or owners of the said lands” as may reside in the city, and that they have neglected or refused to pay the same, or shall make affidavit that the owner or owners of any such lands cannot upon diligent inquiry be found in the city, then the mayor, &c., may take order for advertisement and sale of the lands as assessed.
It is evident that the persons on whom the demand is to be made by the collector, must be the same persons who are assessed as such owners or occupants on the assessment list. It is no part of his duty to determine who are and who are not owners or occupants. His office is merely ministerial, to collect or endeavor to collect the moneys mentioned in the assessment roll of the persons named therein. The assessment list is the foundation of all the subsequent proceedings. The persons named in it as owners or occupants of any particular lot may have their goods and chattels levied on and sold to pay the *55 assessment; and it is only by the demand of the money upon the person so assessed that the corporation acquire the right to sell the land itself for non-payment of the assessment. It would seem, then, that the designation of the name of the actual owner or occupant is under this statute-essential to the validity of the assessment. The statute intended that before a sale of the premises, the assessment should be demanded twice of the actual owner, and not of any person who might be put down at random as the owner; and that, without evidence of .such demands, the corporation would have no jurisdiction.
The counsel for the defendants contended that the contrary to this had been held by the supreme court in the Matter of John and Cherry streets, (19 Wend. 659,) and in the Matter of William and Anthony streets, (19 Ibid. 679.) On reference to these cases, however, it will be seen that the court lay down no général rule on the subject, but confine their remarks to the facts then before them. The parties who claimed to be the owners of certain pieces of land appeared to oppose the confirmation of assessments for opening and widening streets, and contended that their names were not properly inserted in the assessment list, and the court say that in those assessments the mistake would work no prejudice. It is to be observed, however, that the terms of the 177th section, under which those assessments were made, are very different from the present. That section directs that “ the names of the owners are to be given by the commissioners, only as far forth as the same shall be ascertained by them.” (2 R. L. p. 412.) Neither was the question in those cases raised as to the validity of a sale under such an assessment. Were this case, therefore, to be decided upon the language of the 175th section before quoted, we should have-great doubts whether the assessment, and in consequence the sale of the lot in controversy, were not wholly void.
The first section of the act of May 14th, 1840, (Laws of 1840, ch. 326, p. 272,) has somewhat modified the 175th section of the act of 1813. It is as follows: “ § 1. In all cases where commissioners or assessors shall describe the houses and lots assessed for any improvement, the assessment shall describe *56 and particularize- all' such houses and lots by the- known street number as well as the «ward number, and shall also state the names ,of the owner or owners and occupant or' occupants; and it shall be. the duty of the surveyors, who shall make out the assessment-list, to ascertain by inquiry, to be made of the collector of taxes* of the ward in which the property assessed is situate, and-by inquiry of the person who» collected -the-'taxes of such ward the previous year, as to such ownership, and such collectors shall afford the requisite information.”
The collector of taxes of the ward, and the person who collected the taxes of the ward for the -previous year, are then the sources' from which the assessors or surveyors are to derive their information as to the ownership of the property assessed. They are referred to in their official-capacity, -as public officers, deriving their knowledge from the . tax books placed in their hands. The-surveyors, or persons who make out the assessment lists, thus being directed .to these sources of information as to tbe particular fact of ownership, are to take the fact as shown- by-the tax books to be true. They would not be justifled, perhaps, in -acting on ■ their own private knowledge, nor arfe they required to-look toother sources of information. • The intent of the legislature, we think, obviously was", that the person last assessed as owner, or who last paid taxes ■ as owner, should be deemed, -for the purposes of the -assessments, under the-175th section- of-the-act-of 1813-,• as thctrue owner. - And this construction is confirmed by the third section of the act of May 25th, 1841, (Laws of 1841, ch. 230, p. 210,) which requires that..the- grantee to whom a lot sold for taxes or assessments shall have been conveyed, shall serve a written notice of the sale, -on the person occupying such land or tenements, and the person last assessed as owner. As the premises may have changed owners after the sale, the legislature have adopted the most .feasible mode of-giving the owner actual-notice of the sale, viz., to refer to -the latest assessment books. .*
■ In the case before us, the lot was assessed to E. A. Nicoll as owner. He had been the owner, it is to be presumed, for he conveyed the lot to the plaintiff, and the conveyance was. *57 recorded on the 30th of April, 1838. Did he still appear as owner on the assessment books ? Did the assessors appointed to make this assessment inquire of the collector of "the ward, and of the person who collected the taxes of the previous year, as to the ownership? If they did, and put the lot as belonging to E. A. Nicoll, in consequence of information derived from those persons designated by the law to give it, then the assessment is good and valid in our judgment, notwithstanding the plaintiff was, at the time of the assessment, the true owner. It was his duty to have his name inserted in the assessment roll of the ward as the owner, and if he neglected to do this, he cannot complain of any want of notice occasioned by such neglect.
But how does it appear that E. A. Nicoll’s name was on the collector’s books as the owner of the lot in question ? or that any such inquiry was made as the act of 1841 directs? No evidence was offered of any such inquiry, and we cannot presume that it was made. The property being taken from the true owner by a summary process, the parties claiming under a title derived by such process, must shqw that the law has been strictly complied with. It is no answer to say that at such a distance of time it is impossible to prove the fact. The difficulty in making proof will not repeal the law. The legislature might have said in express terms that the person who last paid taxes, or who was last assessed for taxes, shall be deemed- to be the true owner, and then the mode of proof would be simple. But they have not said so, and have referred the assessors to the information to be derived from personal inquiry of the ward collector. And where the real owner is not named in the assessment, we cannot presume, without proof, that the proper 'inquiry was made. The assessment, for this reason, is, we think, invalid.
If these views are correct, then the advertisement and sale were also void. It is not absolutely necessary, for the purposes of this case, tó decide the third objection.; to wit, that the notice to redeem required by the act of May 25th, 1841, was not given according to law. The question has, however, been argued before us, and it may not be improper to give our views upon it..
The third section of that act is as follows: “Whenever any *58 lands or tenements, sold for assessments or taxes in the city of New York, and conveyed in the manner provided by law, shall, at the time of conveyance, be in the actual occupancy of any person, the grantee to whom the same shall have been conveyed, or the person claiming under him, shall serve a written notice on the person occupying such lands or tenements, and the person last assessed as owner, stating in substance the sale and conveyance, the person to whom made, and the amount of consideration money mentioned in the conveyance, with the addition of forty-two per cent, on such amount as the said lands or tenements were struck off for at the time of the sale, and the further addition of the sum paid for the lease and advertisements, and stating also that unless such consideration money, and the said forty-two per cent., together with the sum paid for the lease, shall be paid to the street commissioner for the benefit of the grantee, in case the said premises shall have been sold for assessments, or to the comptroller, if the same shall have been sold for taxes, within six months after the service of such notice, that the said conveyance will become absolute, and the occupant, and all others interested in the lands or tenements, be barred from all right or title thereto during' the term of years for which such lands or tenements shall have been conveyed.”
If language means any thing, the notice to redeem required by this section cannot be given until after the conveyance has been executed and delivered. None but the grantee, or a person claiming under him, can serve it; and, as if the term “ grantee” did not sufficiently imply the actual execution and delivery of the grant, the terms are, “ the grantee to whom the same shall have been conveyed.” The notice must state the consideration money mentioned in the conveyance, and the sum paid for the lease. The amount of redemption money is to be paid for the benefit of the grantee. In default of payment within six months after the service of the notice, the sa'id conveyance will become absolute, and the occupant and all other parties interested will be barred during the term for which the lands shall have been conveyed.
It would hardly be possible to express in clearer terms that *59 the execution and delivery of the conveyance are essential prerequisites to the service of the notice. It follows from this, by necessary consequence, that the right of redemption continues, in case the lot sold shall be in the occupancy of any person, until the expiration, of six months after such notice has been given by a grantee who has actually received his conveyance.
In the present case, the street commissioner, professing to act in pursuance of the seventh section of the abovementioned act, has given a certificate that the notice from the grantee had been duly served, and that six months had elapsed since the service of the same. This certificate bears date the third day of June, 1844, while the lease executed by the corporation in pursuance of the sale, is dated on the eighth of January, 1844, showing conclusively that the notice must have been given before the execution of the lease. Nor is this all. The testimony of James Pattison, the clerk in the office of the street commissioner, shows that the lease was not in fact delivered to the purchaser, until the third of June, 1844, and that when delivered it had the certificate of the street commissioner, before referred to, attached to it.
■ The notice clearly was not in compliance with the statute, and had therefore no effect whatever in barring the right of the owner to redeem. It was suggested on the argument, that this was according to the practice in the street-commissioner’s office, which had arisen upon the idea that the six months’ notio* to redeem might be given as soon as the purchaser was entitled to his lease, and that the actual execution and delivery of the lease were not necessary. But this construction is at variance with both the letter and spirit of the statute. It was also contended that as the seventh section of the act declares that upon the street commissioner giving the certificate, the conveyance shall become absolute, the court cannot go behind the certificate, but that it must be deemed conclusive.
The utmost effect that can be given to this certificate, is to consider it- as prima facie evidence, if taken in connection with the conveyance itself it appears to be in conformity with the, statute. But when from these documents it clearly appears *60 that the six months’ notice has not been given, or that it was given prematurely, the doctrine contended' for would yield to {he street commissioner the power of repealing the statute, in this' respect, at will.
The six months’ notice then, required by the act, has not been given in this case, and consequently the title of the purchaser has not yet become absolute, but the plaintiff, if the assessment were valid, would still have the right of redemption.
It does not follow, however, that he would be entitled, on this ground, to recover in the present suit. If the sale had been regular, the due execution of the lease would have vested the title of the property in the purchaser for the term of years therein mentioned, subject to the right of the owner to redeem within six months after notice served on him according to the act. In the mean time, the legal title of the purchaser would carry with it the right of possession, and the owner would have a mere equity of redemption. Should he at any time before the expiration of six months after notice to redeem properly given, pay or tender the redemption money required by the act, the legal estate and title would by operation of law be revested in him, and he could then sustain his action to recover the possession. But as it is not pretended in this case that the plaintiff has either paid or tendered the redemption money, he cannot recover on this ground.
He is entitled however to judgment upon the first point, and the motion for a new trial is therefore denied.