# SUPREME COURT.

.In the Matter of ONE HUNDRED AND TWENTY-SEVENTH STREET.

*Street openings — Eminent domain — Constitutionality of statute of 1813.*

The provision contained in chapter 86, Laws of 1813, regulating the opening of streets, avenues and public places in the city of New York that commissioners of estimate and assessment shall not allow compensation for any building erected, in part or in whole, upon any street, avenue, public square or place laid out upon the map or plan of the city, after the filing of the map, does not conflict with section 6 of article 1 of the Constitution, which provides that private property shall not be taken for public use without just compensation

*Special Term, September,* 1878.

MOTION to confirm report of commissioners of estimate and assessment.

The commissioners of streets and roads appointed by chapter 115, Laws of 1807, on the 1st day of April, 1811, filed a map laying out the city of New York north of Houston street.

On said map a street, designated as One Hundred and Twenty-seventh street, was laid out, and upon the map relaying out a portion of said city, filed March, 1868, by the Central Park commissioners the said street was retained. This proceeding was then instituted by the department of public works on behalf of the city to acquire title to the land in said street for public use, and commissioners of estimate and assessment were appointed by the supreme court. On the 2d day of August, 1878, the commissioners presented their report to the

court for confirmation. By their report an award was made to the estate of John McArthur for so much of his land as was required or taken, but nothing was allowed for the buildings upon said land. The commissioners stated as their reason for so doing that the said building was erected after the filing of the city map in 1811.

*James A. Deering*, opposed.

I. The provision of the street opening act of 1813, by which the commissioners have been guided, is in conflict with article 1, section 6 of the Constitution of this state. "Nor shall private property be taken for public use without just compensation." Until the report of the commissioners is confirmed the city acquires no right or title in and to the land within the street lines, nor are owners entitled to compensation until that event (*Matter of Parade Ground*, 60 *N. Y.*, 319; *Matter of Anthony Street*, 20 *Wend.*, 618). The survey and mapping are not a taking, and until the report is confirmed the city has no power to enter, to use, grade or otherwise interfere with the possession or use of the owner. The value of land consists principally in the power and right to use it, and that right cannot be restricted or qualified (*Seaman agt. Hicks*, 8 *Paige R.*, 656; *Corporation agt. Mapes*, 6 *Johns. Ch. R.*, 46; *Varick agt. Smith*, 5 *Paige Ch.*, 146, 159; *Matter of Central Park Extension*, 16 *Abb. Pr.*, 65). The statute, by attempting to deprive the owner of the right to use for an indefinite period of time, is clearly unconstitutional (*Moale agt. Baltimore*, 5 *Md.*, 314; *Matter of Central Park*, 16 *Abb. Pr.*, 65). The statute of 1813 is only in force in so far as it does not conflict with the present Constitution (*Detmold agt. Drake*, 46 *N. Y.*, 318).

II. The provision of the act of 1813 is unconstitutional for the additional reason that it is in conflict with section 7 of article 1. "When private property shall be taken for any public use the compensation to be made therefor, when such compensation is not made by the state, shall be ascertained by

a jury or by not less than three commissioners appointed by a court of record as shall be prescribed by law." This section vests in the commissioners the sole power of determining what is just compensation and what circumstances are to be considered by them in making such estimate. The commissioners are to value the property at the time. it is taken, and the provision in question, by attempting to remove from their consideration the value of a portion of such property and directing them as to what they shall estimate, is a legislative attempt to determine what compensation shall be allowed.

The power to *ascertain* is vested in the commissioners exclusively and consists in the right to consider every element of value of the whole property taken, and that right cannot be confined or limited by the legislature. Action by the legislature would be an attempt to violate the Constitution by usurping powers it withholds. The prohibition of the act of 1813 is opposed to the discretion and judgment vested by the Constitution in the commissioners (*Rochester Waterworks* agt. *Wood*, 60 *Barb.*, 137; *Menges* agt. *Albany*, 56 *New York*, 374; *House* agt. *Rochester*, 15 *Barb.*, 517; *Clark* agt. *Utica*, 18 *id.*, 45; *Beekman* agt. *R. R. Co.*, 3 *Paige*, 45).

*Josiah Porter*, for Mary McArthur, opposed.

*William C. Whitney*, counsel to corporation, for motion, cited *In the Matter of Furman Street* (17 *Wend.*, 649); *Matter of Wall Street* (17 *Barb.*, 617 et seq.).

DANIELS, *J.* — The objection taken to the motion to confirm the report of the commissioners of estimate and assessment is, that they failed to allow as damages the value of certain buildings required to be removed in opening and working the street. The commissioners declined to award damages for these buildings for the reason that the street had been laid out on the map filed of that part of the city in which it is situated previous to the year 1813, and by the terms of the act passed in that year, no compensation was to be allowed in

opening such streets for the value of buildings erected upon the grounds designated as streets on the map of the city which had been so filed (*Laws of* 1813, *chapter* 86, *sec.* 178 ).

The provisions of this act were expressed in it in the following terms : " Provided also that it shall not be lawful for the said commissioners of estimate and assessment to be appointed under and by virtue of this act to allow any sum or compensation whatsoever for any building or buildings which, at any time subsequently to the filing of the maps mentioned in the fifth section of the said last mentioned act ( *chap.* 115, *Laws of* 1807 ), may have been built, placed or erected in part or in whole, on any such street, avenue, public square or place, laid out by the said commissioners of streets and roads in the city of New York, under and by virtue of the last mentioned act.

No question was made but that the map of these had been properly made out and filed, and the streets designated thereon, as that had been provided for by the preceding act mentioned in this section of the act of 1813. But the facts were conceded to be that the map had been legally made out and filed, and that this was one of the streets laid out and designated upon it. But the objection taken to the confirmation of these proceedings has been placed upon the ground that this provision of the act of 1813 was practically abrogated by the adoption of the Constitution of 1846.

The buildings were placed upon the land designated as such streets after the adoption of this Constitution, and not many years before these proceedings were instituted. The precise period of time when they were put up is not important. It is only material for the consideration of the objection presented, that the streets had been laid out upon the map made and filed before the enactment of the law of 1813, and that the buildings for which compensation has been claimed were placed upon the street after the adoption of the Constitution of 1846, and while its provisions were in full force and effect.

In support of the objection made, it has been urged that

this portion of the act of 1813 is in conflict with that part of section 6 of article 1 of the Constitution, which declared that private property shall not be taken for public use without just compensation. From that it has been urged that the owners of the land designated to be devoted to the purposes of the street, had the right to use it the same in all respects as though no street had been mentioned to be, laid over it. But neither this, nor any other provision of the Constitution, in terms, or by any clear implication, assumed the existence of any such right.

The land devoted to the street did remain in the owner until it was actually appropriated by legal proceedings to the use of the public as a street and proper compensation was provided for it. But before that it had been affected by a valid law at the time when it was enacted, depriving the owner of compensation for buildings afterwards placed upon it. At that time the legislative authority was unrestricted and undoubted in this respect, and the act was within the acknowledged and proper scope of legislative authority; and it was enacted to meet what was then believed to be the wants and to provide for the protection of the public interests in what it was then believed would soon become a large and important commercial city. Its object was to make suitable provisions for its future enlargement and expansion; and the policy of it, while it was not prejudicial to the property owners, was not unreasonably generous to the public. It declared and defined the prospective rights and interests of both; for it defined the property which the owners could securely improve, and that which the public should afterwards use. The future rights of both were at once established, and its policy became interwoven with the future growth of the city. It took effect at once, and to that extent, and when there was no obstacle in the way of its enactment, it affected the property subject to its provisions. To that extent it became an executed law when no constitutional impediment whatever could be supposed to stand in its way.

Afterwards the Constitution of 1821 was adopted, with the same provision in it restraining the taking of private property for public use without compensation, as was repeated in the Constitution of 1846. It was expressed in the same terms in both these instruments, and still they were not considered when in the first to be in conflict with this prohibition of the act of 1813. That is evident from the further provision declaring that such acts of the legislature of this state, as are now in force, shall be and continue the laws of this state, subject to such alterations as the legislature shall make concerning the same (*Const.* 1821, *art.* 7, *sections* 7, 13). It is entirely evident from this that the framers of that Constitution did not consider that there was any conflict between this provision, providing for the inviolability of private property, and that made by the act of 1813, concerning the future opening of the streets laid out over this portion of the city, and if it was not in conflict with that Constitution, it seems to follow that it should not be held to be so with the same provision, when it has been simply reasserted in the Constitution of 1846. That this provision of the act of 1813 did not conflict with the declaration made in the Constitution of 1821 is further apparent from the decision which was made *In the Matter of Furman Street* (17 *Wend.*, 649), which, with the other cases of *Jackson* agt. *Mayor of Brooklyn*, and *Hicks* agt. *Mayor of Brooklyn*, are stated to have been affirmed by the court of errors of this state (*Matter of Wall Street*, 17 *Barb.*, 617, 632, 640), and which would not have taken place if the acts of the nature of 1813 had been superseded by any thing contained in the Constitution so soon succeeding them. These cases have been questioned, but never overruled. And they certainly cannot be disregarded as authority, as long as the Constitution so clearly declared that the existing acts of the legislature should all remain in force until the new legislature deemed it proper to change them. No such change was at any time made in this provision of the act of 1813, and accordingly it continued in force, and so

remained, although the Constitution was in full force, declaring that private property should not be taken for public use without compensation. The prohibition of compensation for buildings placed within the bounds defined for the streets by the map filed previous to 1813, was regarded as not in conflict with what the Constitution had provided upon this subject; no change in this respect was made in the Constitution of 1846; but it was further declared that "such acts of the legislature of the state as are not in force shall be and continue the law of the state, subject to such alterations as the legislature shall make concerning the same; but all such parts of the common law, and such of the said acts, or parts thereof as are repugnant to this Constitution are hereby abrogated" (*Article* 1, *sections* 6, 17). This last sentence was the only addition upon this subject which was made in the last Constitution beyond that which was contained in the preceding Constitution, and it requires no different rule of construction, for as the prohibition that private property should not be taken for public use without compensation was not repugnant to the act of 1813, when it existed in the first Constitution, it certainly did not become any more so afterwards by reason of its repetition in the Constitution of 1846.

A preceding act does not become repugnant to another afterwards enacted, when they may both be maintained and enforced together. This is a very well-settled principle of construction (*Bowen* agt. *Leare*, 5 *Hill*, 221 – 225; *Wallace* agt. *Bassett*, 41 *Barb.*, 92 – 96); and though most commonly applied to the interpretation of statutes, it is, nevertheless, equally applicable to the consideration of the effect of constitutional provisions.

Both the statute of 1813 and the Constitution of 1846 may be at the same time enforced, concerning the same subject matter; for private property is not taken for public use without compensation, by means of a statutory enactment that, after it has been laid out as a highway, it shall not be built upon by the owner at the expense of the public, and if built

upon in violation of the prohibition, that he shall not be paid for the buildings, the removal of which his own act has rendered necessary.

Authorities have been cited in support of objection taken to the confirmation of the report of the commissioners, but in none of them can any thing be found warranting the application of a different or broader construction of this provision of the Constitution than that already suggested. The act cannot be held to be repugnant to the Constitution, after it was so long maintained in harmony with the same provision, while it was contained in the Constitution preceding the present one. In each the same solicitude was manifested for the protection of private rights. And, as this law was held to be valid under one, and was so in substance declared by its own language, it should not be held repugnant to the same restraint when included in the other. The motion made to confirm the report must accordingly be granted, and the objection overruled, but without costs.