### In re ROGERS AVE.

(Supreme Court, Special Term, Kings County. December, 1885.)

1. OPENING STREET—ASSESSMENT OF BENEFITS.
   Where a statute providing for opening streets limits the district of assessment to the center of the block between the street opened and the next street, it is a fair rule to assess the cost of the land taken for each block of the street upon the property fronting on such block.

2. SAME—REPORT OF COMMISSIONERS—REVIEW.
   The report of commissioners of estimate and appraisement allowing compensation and making assessments for opening a street must, so far as matters of fact are involved, be viewed with the same favor as the verdict of a jury, and to impeach it it must affirmatively and clearly be shown to be against the evidence.

3. EMINENT DOMAIN—CONSTITUTIONAL LAW.
   Laws 1869, c. 670, providing for the appointment of commissioners to lay out a plan for roads and streets in Kings county, the subsequent opening of

which is discretionary with the various town authorities, violates the constitutional provision against taking property without compensation, in so far as it provides that upon the opening of a street no compensation shall be paid the owner of the land taken for any buildings erected after the filing of the map of such street, since thus restricting the use of the land is taking property.

Proceedings to open Rogers avenue in the town of Flatbush. The commissioners made a report awarding compensation for the land taken, and assessing the property liable therefor, and move for its confirmation. Motion denied.

F. E. Dana, for the motion.
William J. Gaynor, contra.

CULLEN, J. The report of the commissioners of estimate and appraisement, so far as matters of fact are involved, is viewed with the same favor as the verdict of a jury. To impeach it, it must affirmatively and clearly be shown to be against the evidence. In re Furman St., 17 Wend. 649; In re John and Cherry Sts., 19 Wend. 659. Here such fact does not appear, and therefore the court will only review the principles or rules upon which the commissioners act.

As to the assessment, I can find no error. The statute limits the district of assessment to the center of the block between the street opened and the street next adjoining thereon, unless the board of improvement determine in its resolution to make the improvement to extend to such district. No such determination was made in this case. The existence of Prospect street, and its adoption on the permanent plan, I think is established. The commissioners, therefore, rightly determined the distance of assessment. The rule adopted by them was to assess the cost of the land taken for each block of the street upon the property fronting upon such block; or, in other words, to make each block pay for the land taken for such block. This rule not only seems to me fair in principle, but has been the one adopted in every street opening that has come under my observation. While it is easy to suggest cases in which it might be inapplicable, I do not see that this case is taken out of the general rule.

The awards to Morran and Tierney are objected to by those owners because the commissioners have allowed no compensation for buildings, or parts thereof, lying within the limits of the street opened by these proceedings. The fact is admitted, and the action of the commissioners is defended on the ground that the act of 1869 (chapter 670) for the appointment of commissioners to lay out a plan for roads and streets in the county of Kings, directs that, if any buildings shall be erected on the line of any avenue or street, as laid out on said plan, after the filing of the map thereof, no compensation shall be paid to the owner thereof upon the opening of the street. If this provision be valid, the action of the commissioners is justified, but the objectors claim that the provision is unconstitutional and void. Provisions similar to the one in question are common. Their validity has been challenged, but the precise point apparently decided in only two reported

cases, in both of which they were upheld. In re Furman St., 17
Wend. 649; In re One Hundred and Twenty-Seventh St., 56 How. Pr.
60. The former case arose in the city of Brooklyn. Though the case
arose in 1836, the statute laying out the streets and containing the pro-
visions complained of was passed in 1816. Justice Bronson upheld
the validity of this provision on two grounds: First, that at the time
of the passage of the act there was no inhibition in the constitution of
the state against taking private property without compensation; second,
that the landowner received compensation through the enhanced value
of his lands by reason of the adoption of the general plan of streets.
The second case arose in the city of New York, but the street opened
was laid out by an act passed in 1813, which directed that the compen-
sation should be made for buildings subsequently erected on the street.
The decision of the Furman Street Case is said to have been approved
by the court of errors in 1843 in the case of Jackson v. Mayor of Brook-
lyn and Silliman v. Same, (not reported,) on the ground that the pro-
hibition was constitutional, because it did indirectly provide full com-
pensation by the conversion of county farms into city lots. See opin-
ion in Re Wall St., 17 Barb. 617. But the validity of the act under
examination in this case, passed since the constitution of 1846, can be
upheld on neither of the grounds of the decision of Judge Bronson, nor
of the court of errors. Private property cannot be taken without com-
pensation, and, where the compensation is not made by the state, it
must be determined by a jury, or commissioners appointed by a court
of record. This is not a case where compensation is made by the state,
nor is it a state improvement. Sage v. City of Brooklyn, 89 N. Y. 189.
Therefore, if the increase of the value of his property is compensation
for the deprivation of the unrestricted right to use the land, interme-
diate the adoption of the plan and the opening of the street, it is so
solely by the fiat of the legislature. But if it were actually the fact,
neither the legislature nor the courts, under the constitution of 1846,
are competent to ascertain it. That must be done by a jury, or by com-
missioners appointed by a court of record. In re Middleton, 82 N.
Y. 196; Menges v. City of Albany, 56 N. Y. 374. The Case of One
Hundred and Twenty-Seventh St. was doubtless well decided if it con-
sidered the act of 1813, and filing the map thereunder, worked a limited
appropriation of the land as of such time. But the opinion of Justice
Daniels placed his decision not only on that ground, but goes to the ex-
tent of holding that this restriction on the right to place buildings upon
the line of future highways is not taking property. I cannot assent to
this contention. All the cases cited, save this, conceded that the re-
striction is a taking of the land to a certain extent. It may well be that
the only purpose for which the land can possibly be used is for the erec-
tion of buildings. It is said by Judge Earl in Re Jacobs, 98 N. Y. 98:

"One may be deprived of his liberty and his constitutional right thereto vio-
lated, without the actual restraint of his person. Liberty, in its broad sense, as
understood in this country, means not only the right of freedom from servitude,
or restraint, or imprisonment, but the right of one to use his faculties in all law-
ful ways, to earn his livelihood in any lawful calling, and to pursue any lawful
trade or vocation."

So the right to property includes the right to use that property for any lawful purpose of profit to the owner. People v. Marx, 2 N. E. Rep. 29. Whenever that right is restricted, property is taken, within the meaning of the constitution. Doubtless all property is subject to the police power of the state, and to the rule sic utere tuo, etc. But, palpably, an enactment that one shall not improve his property, in order that, in case the public should acquire it, it may purchase it cheap, is no exercise of the police power. There is no provision in the act of 1869 for compensating the owner for this deprivation of the right to use his land. In my opinion, therefore, the direction contained in that act, that he shall receive nothing for his building, is void. I do not say that when a highway is laid out, and provision made for its speedy and certain opening, buildings could be erected to enhance the damages. But there is no direction to open the streets laid out under the act of 1869. The opening of such streets is entirely discretionary with the various town authorities. Decades not only may, but doubtless will, elapse before the majority of such streets are opened. Even in the Case of One Hundred and Twenty-Seventh St., New York, cited above, over 60 years intervened between the laying out of the street and the compensation to the owners of the land. The report must be sent back to the commissioners, with instructions to estimate and allow for the damages to buildings on the line of the street, and to modify their awards and assessments accordingly.